## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JULIAN WATTS,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CAUSE NO. 3:22-cv-00419-G** |
| | § | |
| | § | **JURY TRIAL REQUESTED** |
| **AMAZON.COM SERVICES LLC** | § | |
| | § | |
| **Defendant** | § | |
| | § | |

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW Plaintiff, Julian Watts, who files this Amended Complaint complaining of Amazon.com Services LLC (hereinafter collectively "Amazon") as follows:

## I.  PRELIMINARY STATEMENT

1.     This lawsuit arises from the disparate treatment and termination of Plaintiff through Amazon's agents. Throughout Plaintiff's employment with Amazon, Amazon acquiesced to the racial discrimination routinely taking place against Plaintiff and other African American employees.  Upon information and belief, Plaintiff asserts that General Manager, Doug Bogdanowitz' racial biases against African Americans negatively impacted conditions of Plaintiff's employment as well as other African American employees.

2.     Plaintiff has been compelled to bring this action against Amazon because it failed to ensure that the discriminatory acts and adverse employment actions taken against its African American employees were prevented or remedied. Plaintiff also sues for the retaliation he endured

following his involvement in protected activity in support of his African American colleagues, and his formal complaint regarding disparate treatment against Bogdanowitz. Amazon is legally responsible for the actions of Bogdanowitz as he acted as managerial personnel at all times relevant to Plaintiff's employment.

3.     Plaintiff seeks back-pay, compensatory damages, and punitive damages, plus court costs and attorneys' fees.

## II.   JURISDICTION AND VENUE

4.     Jurisdiction over plaintiffs' race discrimination and retaliation claims against Defendant is conferred on this Court by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, *et seq*.) as well as 42 U.S.C. §1981.

5.     Federal question jurisdiction is conferred on this Court by 28 U.S.C. §1331 as this action arises under the Constitution and laws of the United States.

6.     Venue is appropriate in this Court as all facts giving rise to Plaintiff's claims occurred within the Northern District of Texas, Dallas Division.

## III.   ADMINISTRATIVE PREREQUISITES MET

7.     Plaintiff filed Amended Charge No.: 450-2021-04387 with the EEOC alleging racial discrimination and retaliation with the EEOC. Upon request of Plaintiff, his notice of "Right-to-Sue" was issued for Plaintiff (attached as Exhibit "A") and Plaintiff, thereafter, was able to file a lawsuit on his Title VII claims. This case is filed within 90 days of Plaintiff's receipt of his notice of right to sue from the EEOC.

8.     All potential administrative remedies have been exhausted and prerequisites to litigation have been met.

## IV.   PARTIES

9.      Plaintiff is an African American male individual and a citizen of Texas and the United States who currently resides in Allen, Texas. At all times relevant to this action, he was an employee of Amazon.

10.     Defendant Amazon.com Services LLC is a Delaware limited liability company doing business within the boundaries of the Northern District of Texas, Dallas Division.

11.     Amazon.com Services LLC may be served with the Complaint and Summons by serving its registered agent for service, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620 Austin, TX 78701-3218.

## V.  STATEMENT OF FACTS

12.     On or about June 17, 2019, Plaintiff, an African American male with more than two decades of experience in finance, began working for Amazon as a Finance Manager. From the beginning of his onboarding process until his termination, Plaintiff was faced with unusual pushback given the nature of his position. Notwithstanding, Plaintiff went on to become a high performer, leading his team to the highest 20% of its network, and eventually maxing out in the top 5% of his network in 2021. Despite his unassisted success, Plaintiff was subjected to disparate treatment resulting in his unlawful termination.

13.     In addition to the discrimination occurring during his onboarding process, Plaintiff noticed discrepancies in the treatment of his African American colleagues as compared to their white counterparts. While training two African American Analysts, Plaintiff noticed that General

Manager, Doug Bogdanowitz (a white male) continuously held the African American trainees to a higher standard than their white counterparts. Throughout Plaintiff's time training these Analysts, he was shadowed by Bogdanowitz unjustifiably so, and routinely second guessed.

14.     On several occasions during Plaintiff's trainings, two of Plaintiff's African American female trainees were targeted by Bogdanowitz' unwarranted, public verbal attacks. This discriminatory treatment did not extend to white employees.

15.     Following this incident, Bogdanowitz went on to rank several African American Operations Managers as "Least Effective." One African American female employee who received such a ranking opted to move to a new work site due to Bogdanowitz' discriminatory behavior and disparate treatment. As a witness to this unjust behavior, Plaintiff came to the defense of several targeted African American employees, speaking out on their behalf.

16.     More specifically, during an Operational Leadership Review (OLR) public forum, Plaintiff provided evidence supporting the African American employees who had been unjustly labeled as "Least Effective." During this forum, Bogdanowitz was visibly disturbed by Plaintiff's evidence and arguments.

17.     The following day, Plaintiff received a call stating that his performance was unsatisfactory. In a clear retaliatory act against Plaintiff for his involvement in defending African American employees against unjustly obtained low rankings, Bogdanowitz complained about Plaintiff's performance despite clear evidence to the contrary. Shortly thereafter, Plaintiff received notice that he was placed in a FOCUS (Performance Improvement Plan) by Regional Manager, Anne Hyppolite based on Bogdanowitz' false claims against Plaintiff.

18.     Plaintiff attempted to discuss these claims with Bogdanowitz; who without explanation cancelled all of the scheduled meetings with Plaintiff. Once aware of Bogdanowitz'

retaliatory efforts, Plaintiff then realized that filing a formal complaint with HR was necessary to document Bogdanowitz' actions.

19.     On or about January 4, 2021, Plaintiff filed a complaint with HR personnel regarding the discrimination and retaliation faced at the hands of Bogdanowitz. Immediately following this complaint, two additional African American managers received "Least Effective" performance rankings, one of whom later separated from the company and was replaced by another African American employee on the list of "Least Effective" managers.

20.     Despite attempting to speak with Bogdanowitz to get clarity on the reasoning behind the negative performance review, Plaintiff's efforts were ignored. In fact, in a clear violation of company policy, and with the goal of invalidating Plaintiff's complaint, HR personnel was instructed to change performance rankings of "Least Effective" African American Managers at the site in a manner directly addressing the evidence presented by Plaintiff in his January 4, 2021, HR complaint. Upon noticing that Plaintiff had witnessed a clear discussion of Amazon's breach of company policy through the company's internal Chime chat, Bogdanowitz then requested that he and HR personnel discuss Plaintiff's complaint "offline." Following Bogdanowitz' request, Plaintiff was then excluded from all further discussions of the matter.

21.     In addition to excluding Plaintiff from these conversations, and avoiding Plaintiff's attempts at discussing alleged performance issues, Bogdanowitz also provided Plaintiff with conflicting information as compared to Hyppolite's, thus making compliance with the FOCUS unnecessarily difficult.

22.     Despite little guidance, unusually short deadlines, and removal of resources, Plaintiff complied with his FOCUS to the best of his abilities – all while being pressured to return to the office immediately despite clearly suffering from the lasting effects of COVID-19. Moreover, Plaintiff believed that he would be terminated if he took any sick leave due to the

pending FOCUS. Notwithstanding his efforts, Plaintiff was ultimately terminated on or about June 17, 2021. Amazon, through its agents with remedial authority, knew of the discrimination and retaliation, yet failed to take prompt, appropriate, remedial action, instead protecting Bogdanowitz rather than conducting an unbiased investigation.

23.     Acquiescence by management and other officials to Bogdanowitz' clear and persistent pattern of discrimination and retaliation established a pattern and practice of disparate treatment, discrimination, and retaliation against its African American employees by those in supervisory and/or managerial positions.

## VI. STATEMENT OF THE CASE

COUNT I:     RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL
             RIGHTS ACT OF 1964, 42 U.S.C. §2000E *ET SEQ.,*

24.     Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 24.

25.     Plaintiff is an African American finance professional, with over two decades of experience in finance, who was one of several African American employees subjected to a pattern and practice of disparate treatment resulting in his unlawful termination. More specifically, Plaintiff was subjected to racial discrimination, retaliation, and termination, due to unjustified and factually unsupported disciplinary actions. The rapid series of contrived disciplinary actions were designed to improperly manufacture a basis for heightened disciplinary penalties and thereby support a recommendation of termination and other retaliatory actions against Plaintiff.

26.     Plaintiff suffered disparate treatment and pretext in the terms and conditions of his employment compared with the way non-African American employees, or employees that had not engaged in protected activity, were treated.

27.     Officials of Amazon with authority to correct the conduct had actual knowledge and/or should have known of Bogdanowitz' racially discriminatory behavior prior to the report of

Plaintiff, and then failed to take immediate and appropriate corrective action as required by law causing Plaintiff's termination.

28.     Plaintiff was subjected to retaliation after he defended several African American employees targeted by discriminatory practices and submitted a complaint to HR personnel.

29.     Amazon, by allowing Bogdanowitz to target and discriminate against African American employees and retaliate against Plaintiff, intentionally engaged in unlawful employment practices involving Plaintiff.

30.     Amazon, by failing to exercise reasonable care to prevent and cure allegations of racial discrimination, allowed Bogdanowitz to discriminate against Plaintiff, as described above, in violation of 42 U.S.C. 2000e, *et seq.*

31.     As a direct and proximate result of Amazon's conduct in violation of 42 U.S.C. §2000e, *et seq*., Plaintiff suffered substantial emotional and financial damages, past and future, for which he pleads to be compensated.

**COUNT II:       RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000E *ET SEQ.*,**

32.     Plaintiff was retaliated against by his employer, Amazon, for engaging in protected activity when reporting and opposing the race-based discrimination against African American employees.

33.     Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 33.

34.     Plaintiff engaged in protected activity by speaking out in support of African American employees against discriminatory rankings, and by reporting facts and circumstances surrounding Bogdanowitz' disparate treatment towards African Americans to HR personnel.

35.     Plaintiff's involvement in protected activity along with his submission of

complaints alleging racial discrimination, as described above, caused him to suffer an adverse employment action in the form of an unwarranted performance improvement plan ("FOCUS") and an unlawful termination.

36. Amazon intentionally engaged in unlawful employment practices involving Plaintiff after Plaintiff engaged in a federally protected activity regarding what he believed to be a clear violation of his African American colleagues' rights under 42 U.S.C. Section 2000e -3(a) *et. seq.* Title VII.

37. Plaintiff suffered substantial emotional and financial damages, past and future, proximately caused by Amazon's retaliation for which Plaintiff now seeks compensation.

**COUNT III:       RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981**

38. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 38.

39. Plaintiff is an African American finance professional, with over two decades of experience in finance, who was one of several African American employees subjected to a pattern and practice of disparate treatment resulting in his unlawful termination. More specifically, Plaintiff was subjected to racial discrimination, retaliation, and termination, due to unjustified and factually unsupported disciplinary actions. The rapid series of contrived disciplinary actions were designed to improperly manufacture a basis for heightened disciplinary penalties and thereby support a recommendation of termination and other retaliatory actions against Plaintiff.

40. Plaintiff suffered disparate treatment and pretext in the terms and conditions of his employment compared with the way non-African American employees, or employees that had not engaged in protected activity, were treated.

41. Officials of Amazon, with authority to correct the conduct, had actual knowledge and/or should have known of Bogdanowitz' racially discriminatory practices prior to the report of

Plaintiff, and then failed to take immediate and appropriate corrective action as required by law causing Plaintiff's termination.

COUNT IV:       RETALIATION IN VIOLATION OF 42 U.S.C. §1981

42.     Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 42.

43.     Plaintiff was subjected to retaliation after participating in what he believed to be protected activity in support of African American employees targeted by discriminatory practices. Furthermore, Plaintiff also faced retaliation following submission of his complaint to HR personnel regarding Bogdanowitz' behavior towards African American employees.

44.     By allowing Bogdanowitz to unfairly rank and/or terminate African American employees and retaliate against Plaintiff, Amazon intentionally engaged in unlawful employment practices involving Plaintiff.

45.     Amazon, by failing to exercise reasonable care to prevent and cure allegations of racial discrimination, allowed Bogdanowitz to discriminate against Plaintiff, as described above, in violation of 42 U.S.C. §1981.

46.     As a direct and proximate result of Amazon's conduct in violation of 42 U.S.C. §1981, Plaintiff suffered substantial emotional and financial damages, past and future, for which he pleads to be compensated.

## VII.  DAMAGES

47.     As a direct and proximate result of the conduct of Amazon, the Plaintiff has suffered damages.

48.     Plaintiff has suffered disgrace, shame, embarrassment and humiliation as well as extreme emotional and mental anguish in the past and in all probability, Plaintiff will continue to suffer such disgrace, shame, embarrassment, humiliation, personal indignity and extreme

emotional and mental anguish in the future.

49.     In addition, Plaintiff has suffered damage to his reputation both in the past and in the future. Injury to the reputation of the Plaintiff has been substantial and, in all probability, his reputation has been permanently impaired and damaged.

50.     Additionally, Plaintiff has suffered loss of earnings capacity in the past and in reasonable probability, his capacity to work and earn money in the future beyond this date have been seriously impaired. Plaintiff is entitled to back pay and front pay. Reinstatement is not feasible.

51.     Plaintiff has been deprived of employment benefits. Employment benefits include all employment benefits which they had or would have had at Amazon's employment, including but not limited to past and future wages, stock options, retirement benefits, health care benefits, social security benefits, and unemployment benefits.

52.     Plaintiff has suffered additional consequential damages.

53.     The precise amount of damages suffered by Plaintiff cannot be measured with mathematical accuracy at this time nor can Plaintiff state with any degree of certainty at this time the full extent and impact of future losses. Damages can be more accurately determined after completion of discovery in this case and Plaintiff specifically reserves the right to plead further with respect to such damages.

## VIII.  PUNITIVE DAMAGES

54.     Amazon is liable for punitive damages on account of its completely willful and reckless disregard of Plaintiff's rights under Title VII and 42 U.S.C. §1981. Amazon's conduct was wanton, willful, reckless, and/or intentional, to cause substantial harm or injury, rendering the award of punitive damages appropriate.

## IX.  <u>JURY TRIAL</u>

55.     In the Exercise of rights under the Seventh Amendment to the United States Constitution and applicable statutes and procedural rules, Plaintiff respectfully requests that all issues of fact in his claims for relief be decided by a jury.

## X.  <u>PRE-TRIAL INTEREST</u>

56.     Plaintiffs also seeks pre-judgment interest at the maximum legal rate.

## XI.  <u>ATTORNEYS' FEES</u>

57.     Plaintiff is entitled to reasonable and necessary attorneys' fees pursuant to 42 U.S.C. §2000e and 42 U.S.C. §1981 for the preparation and trial in this case and various stages of appeal, if any, including additional attorneys' fees in the event it is necessary to collect this amount of money once a judgment becomes final.

## <u>PRAYER</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully pray that Amazon be cited to appear and answer herein, and that upon a final trial by jury, judgment be entered for the Plaintiff against each of the Defendants for damages and such other and further relief to which the Plaintiff may be entitled at law or in equity, including:

1.     compensatory damages;
2.     punitive damages;
3.     pre-judgment interest;
4.     post-judgment interest;
5.     attorneys' fees; and
6.     court costs.

Respectfully submitted,


/s/ *Gabrielle O. Ilochi*
Gabrielle O. Ilochi
THE ILOCHI LAW FIRM
11601 Shadow Creek Pkwy.
#111-325
Pearland, Texas 77584
State Bar No. 24107815
Fed. State Bar No. 3256155
Tel: (713) 487-9072
Fax: (713) 583-7022

/s/Kyla Cole
Kyla Cole
NEILL LEGLER COLE, PLLC
3300 Oak Lawn Ave.,
Suite 425
Dallas, Texas 75219
State Bar No.
Fed. State Bar No.
Tel: (214) 748-7777
Fax: (214) 748-7778

/s/ Jane Legler
Jane Legler
NEILL LEGLER COLE, PLLC
3300 Oak Lawn Ave.,
Suite 425
Dallas, Texas 75219
State Bar No.
Fed. State Bar No.
Tel: (214) 748-7777
Fax: (214) 748-7778

/s/ Christi Neill
Christi Neill
NEILL LEGLER COLE, PLLC
3300 Oak Lawn Ave.,
Suite 425
Dallas, Texas 75219
State Bar No.
Fed. State Bar No.
Tel: (214) 748-7777
Fax: (214) 748-7778

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on Defendant's counsel of record on this the 12th day of April 2022 via electronic service pursuant to the Federal Rules of Civil Procedure.

_/s/Gabrielle O. Ilochi_____

**Gabrielle O. Ilochi**

# EXHIBIT A

## (AMENDED) CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| **X** FEPA | **450-2021-04387** |
| **X** EEOC | **(Amended)** |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Julian Watts** | **(917) 748-8223** | **12/20/1976** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **861 Timmaron Dr.** | **Allen, TX 75013** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Amazon.com, Inc.** | **+500** | **(817) 753-3659** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **2601 W Bethel Road** | **Dallas, TX 75261- 4034** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

| | | | | |
|---|---|---|---|---|
| **X** RACE | ☐ COLOR | **X** SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
| **X** RETALIATION | ☐ AGE | ☐ DISABILITY | ☐ OTHER *(Specify below.)* | |

| Earliest | Latest |
|---|---|
| **1/1/2020** | **6/17/2021** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra page(s)):*

I. On or about June 17, 2019, I began working for Amazon.com, Inc. ("Amazon") as a Finance Manager. In the early stages of my employment with Amazon, I faced a difficult onboarding process. Within two weeks, I had gone from training for my new position to learning on the job without assistance. Despite this transition, I quickly developed into a high performer with consistent results solidifying my progress. In fewer than two years with Amazon, and with significantly less resources, I led my team to perform in the highest 20% of my network, maxing out in the top 5% of my network in 2021. While I expected a promising future with the company, I soon discovered the limited trajectory that Amazon had in store for me – an African American, male employee.

II. Early on in my employment, I noticed a discrepancy between how African American managers were treated in comparison to our non-African American counterparts. More specifically, I noticed that African American employees often bore the brunt of disparate treatment at the hands of higher-level managers and regional managers.

III. In the beginning stages of my position, I was assigned to manage two Analysts – both African Americans. While I was initially excited about the opportunity to assist new Analysts, I soon learned that no amount of training would spare them from inevitable disparate treatment. While managing these employees, I was met with more opposition than ever before. Nothing my trainees did met the heightened standards of my General Manager, Doug Bogdanowitz – a white male.

IV. Initially, Mr. Bogdanowitz directed his mistreatment at me, creating unusually heightened standards and often second guessing my judgment. Soon this treatment was also directed at my trainees. During one incident, one of my Analyst trainees, a 22-year-old African American female was publicly berated by Mr. Bogdanowitz in front of a team of exclusively white male employees. This type of

Bogdanowitz took advantage of those lesser protected employees. The admonishment my trainee received was so demoralizing, she left the meeting in tears.

V. In a similar fashion, in Q1 2020, Mr. Bogdanowitz singled out and berated another African American female employee. In a similar fashion to his treatment of my Analyst trainee, Mr. Bogdanowitz was also intentional with his disparate treatment of this Senior Operations Manager. Despite beginning on a stellar note as a Top Tier manager, the Senior Operations Manager's accomplishments were ignored. Under Mr. Bogdanowitz' management, the Senior Operations Manager was ranked as LE (Least Effective), as was common for African American managers. In addition to her drastically lowered performance ranking, Mr. Bogdanowitz verbally attacked and berated this employee, ultimately causing to her move from the FTW6 site to another organization within the company. As a firsthand witness to the disparate treatment from Mr. Bogdanowitz, it became apparent that there existed a deeply rooted and systemic prejudice against African American employees, especially women.

VI. I attempted to address the mistreatment and improper ranking of the African American Senior Operations Manager during an Operational Leadership Review (OLR) – a public forum made up of over 30 senior level managers. During the OLR, I called attention to the employee's consistent performance and defended her against the inapt LE ranking she had received. In support of my statements, other managers familiar with the employee's work joined in defending her performance, thus further contradicting Mr. Bogdanowitz' LE ranking. As a result of these statements, the forum concluded that the employee was improperly ranked as an LE. Instead, the forum determined that the LE ranking was more appropriately affixed to an underperforming white male employee. As a result of this change, Mr. Bogdanowitz was visibly upset, and his behavior to follow further proved so.

VII. The following day, I received a call stating that my performance was unsatisfactory. Immediately, it became abundantly clear that Mr. Bogdanowitz was unhappy with my public defense of an African American female employee and was retaliating. Despite the lack of concrete support of any such unsatisfactory performance, and despite being in the top 20% in my network, I was accused of underperforming in a thinly veiled attempt at padding my file for retaliation. Out of fear of continued retaliation, I made several attempts at contacting Mr. Bogdanowitz to get insight into any areas requiring improvement. Additionally, I scheduled several appointments with him to discuss any performance issues – nearly all of which he cancelled without explanation.

VIII. In spite of my conversation with Mr. Bogdanowitz, the LE performance rankings for all African American managers under Mr. Bogdanowitz remained consistent for four periods beginning in Q1 of 2019 through Q1 of 2021. In furtherance of the clear agenda to disadvantage African American managers, I was then notified of my placement on a PIP by Regional Manager, Anne Hyppolite. According to Ms. Hyppolite, who claimed that the situation was beyond her control, my General Manager, Mr. Bogdanowitz claimed that my performance was subpar. Following my failed attempts at speaking with Mr. Bogdanowitz about ongoing discriminatory issues, I understood that I was being retaliated against for my participation in a discriminatory investigation. As such, I knew that I needed to address my concerns at a higher level. Shortly thereafter, I reported to HR to inform them about Mr. Bogdanowitz' discriminatory behavior and retaliation.

IX. On or about January 4, 2021, I submitted a written complaint to HR regarding the disparate treatment against African American employees, specifically women. In my complaint, I referenced several instances wherein African American employees were treated drastically different than their counterparts and held to a heightened standard. Furthermore, I mentioned situations wherein Mr. Bogdanowitz told an African American employee that he felt "uncomfortable" by the discussion of racial inequality in the workplace and overcoming implicit biases. I went on to describe the many ways in which African American employees were disenfranchised in the workplace and sabotaged in a blatant attempt at discrediting their work. In contrast, I also noted the difference in Mr.

management and training skills, Mr. Bogdanowitz showed excitement about my trainee's performance alone, completely disregarding the training that went into said performance.

X.   Immediately following my HR complaint, two additional African American managers received LE performance rankings. After one of these managers received said rankings, he separated from the company, and a different African American manager replaced the former receiving the LE performance ranking.

XI.  As I witnessed the continuing discrimination, the topic of inequitable performance reviews became unavoidable. I addressed these issues during a Chime chat with HR regarding unsupported low performance rankings and HR prompted changes to African American rankings outside of OLR meetings – a clear violation of company policy. In this chat conversation, Mr. Bogdanowitz showed his clear discomfort with the open and traceable dialogue taking place, suggesting that the conversation be had "offline."

XII. On or about Q1 of 2021, one month following my HR complaint, Mr. Bogdanowitz became increasingly aware of the severity of his discriminatory acts. In a clear effort to mitigate the damage he had done, he attempted to avoid further complaints by blindly reversing several discriminatory performance reviews he had once enacted. Despite these transparent efforts at covering his behavior with HR, Mr. Bogdanowitz continued to ignore direct communication with me and kept any indirect communication limited to vague compliments regarding how well I was performing. The conflicting information I received from Mr. Bogdanowitz in contrast with that of Ms. Hyppolite's negative feedback made compliance with my PIP increasingly difficult.

XIII. In an attempt to cover the discriminatory behavior, HR allowed Mr. Bogdanowitz to promote an African American male manager – something that had never been done during my employment with the company. In an email announcement congratulating the employee, Mr. Bogdanowitz further exposed his insincerity, stating the wrong name in the congratulatory email.

XIV. For weeks, I remained on the PIP, and attempted to comply despite very little guidance from management. Over the course of my PIP, my resources were removed in an uncharacteristic fashion, upper management failed to follow protocol to allow me to address my PIP, and I was even tasked with completing four projects in a matter of four weeks – two of which directly preceded Christmas. I remained fearful of termination and additional damage to my professional reputation. Moreover, I suffered greatly, not only from the discrimination and retaliation, but also from the demoralizing silence I received from my General Manager, Mr. Bogdanowitz.

XV.  To date, African American employees remain at the mercy of an impenetrable merit system wherein performance rankings are kept private and withheld from employees, leaving them unaware of what information is factored into their rankings. The ranking system is determinative of bonuses, salaries, stock options, and a host of other outcomes, thus disadvantaging African American employees who remain unable to contradict or even address any potential issues in their performance. This covert and systemic racially biased system has been permitted to thrive and will continue to do so if left unaddressed.

XVI. Since being placed on the PIP, I submitted an appeal outlining the areas where management alleged that I fell short, and I provided evidence to the contrary. Despite my attempts, my employer remained uninterested in my clear support and evidence. It is evident that my employer was determined to eliminate me, not only for unveiling the discriminatory work culture, but also for having the audacity to file this discrimination charge with the EEOC. As such, in a final retaliatory act, my employer terminated me on June 17, 2021.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Jun 21, 2021     *Julian Watts*<br>Julian Watts (Jun 21, 2021 17:08 CDT)<br><br>_Date_      *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 5 (5/01)

# (Amended) 6.21.21 EEOC Charge

**Final Audit Report** 2021-06-21

| | |
|---|---|
| Created: | 2021-06-21 |
| By: | Gabrielle Ilochi (gabrielle@ilochilaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA93QMWzk_asKEbSajLrD5OgIRNi3FeBJe |

## "(Amended) 6.21.21 EEOC Charge" History

Document created by Gabrielle Ilochi (gabrielle@ilochilaw.com)
2021-06-21 - 9:54:33 PM GMT- IP address: 108.90.105.241

Document emailed to Julian Watts (watts.julian@gmail.com) for signature
2021-06-21 - 9:55:36 PM GMT

Email viewed by Julian Watts (watts.julian@gmail.com)
2021-06-21 - 10:03:25 PM GMT- IP address: 74.125.214.29

Document e-signed by Julian Watts (watts.julian@gmail.com)
Signature Date: 2021-06-21 - 10:08:14 PM GMT - Time Source: server- IP address: 76.201.1.151

Agreement completed.
2021-06-21 - 10:08:14 PM GMT

**Adobe Sign**

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Mr. Julian Watts** | From: | **San Antonio Field Office** |
|---|---|---|---|
| | **861 Timmaron Drive** | | **5410 Fredericksburg Road, Suite 200** |
| | **ALLEN, TX 75013** | | **San Antonio, TX 78229** |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **450-2021-04387** | **Pamela Taylor,**<br>**Investigator** | **(210) 640-7558** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- [ ] More than 180 days have passed since the filing of this charge.

- [ ] The EEOC is terminating its processing of this charge.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

02/02/2022

| Enclosures(s) | **Norma Guzman,**<br>**Acting Field Director** | *(Date Mailed)* |
|---|---|---|

cc:  **Stephanie Suarez**
**Attorney At Law**
**Amazon  c/o Littler Mendelson, P.C.**
**2301 MCGEE ST STE 800**
**Kansas City, MO 64108**

**GABRIELLE O ILOCHI**
**11601 Shadow Creek Parkway, Suite 111-325,**
**Pearland, Texas,  77584**

Enclosure with EEOC
Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***